THE CHICAGO MILK SHIPPERS ASSOCIATION

V.

CHARLES C. FORD ET AL.

*Trusts—Session Laws 1891, 206.*

In an action brought to recover for certain milk sold and delivered by a corporation composed of milk producers, the only defense being made under the act approved June 11, 1891, touching the punishment of persons guilty of forming trusts, pools and combines, this court holds that for the purposes of this case the stockholders have no existence, suit having been brought by the corporation; that the proper construction of such act does not prohibit the conduct of corporations or copartnerships in accordance with the opinion of a majority of the directors or partners after mutual counsel, and enters judgment herein in behalf of the plaintiff for the amount claimed.

[Opinion filed December 31, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. CUTTING & CASTLE, for appellant.

Messrs. E. A. ABORN and H. T. HELM, for appellees.

MR. JUSTICE GARY.   The appellant sued the appellees for milk sold and delivered and not paid for, during October, 1891, to the amount of $433.80.

The only defense was under the act approved June 11, 1891, entitled " An Act to provide for the punishment of

persons, co-partnerships or corporations forming pools, trusts and combines, and modes of procedure and rules of evidence in such cases." Session Laws 1891, 206; Bradwell's Edition, 78. The sections of that act material in this case are :

"Sec. 1. If any corporation organized under the laws of this or any other state or country, for transacting or conducting any kind of business in this State, or any partnership or individual or other association of persons whosoever shall create, enter into, become a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person or any other association of persons, to regulate or fix the price of any article of merchandise or commodity, or shall enter into, become a member of or a party to any pool, agreement, contract, combination or confederation to fix or limit the amount or quantity of any article, commodity or merchandise to be manufactured, mined, produced or sold in this State, such corporation, partnership or individual or other association of persons, shall be deemed and adjudged guilty of conspiracy to defraud, and be subject to indictment and punishment as provided in this act.

"Sec. 2. It shall not be lawful for any corporation to issue or to own trust certificates, or for any corporation, agent, officer or employes, or the directors or stockholders of any corporation, to enter into any combination, contract or agreement with any person or persons, corporation or corporations, or with any stockholder or director thereof, the purpose and effect of which combination, contract or agreement shall be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee or trustees, with the intent to limit or fix the price, or lessen the production and sale of any article of commerce, use or consumption, or to prevent, restrict or diminish the manufacture or output of any such articles.

"Sec. 6. Any purchaser of any article or commodity

from any individual, company or corporation transacting business contrary to any provision of the preceding section of this act, shall not be liable for the price or payment of such articles or commodity and may plead this act as a defense to any suit for such price or payment." The case was tried upon the following :

### STIPULATION AS TO FACTS.

" That the plaintiff is a corporation, organized and doing business in the manner shown by the constitution and by-laws hereto attached, and that said constitution shall be evidence in this cause of the facts herein stated ; that it received milk from various persons operating under and in connection with said association, all of whom are members of and stockholders in said association, and accounts to them for the same, and guarantees to them payment for milk so sold by said plaintiff to the customers of said plaintiff ; that said association fixes and determines the price at which such milk shall be sold, precisely as set forth in said constitution and by-laws ; that said plaintiff on April 5, 1891, fixed the price of its milk for the ensuing six months as follows :

During the months of May and June, seventy-five cents per can.

During the months of July, August and September, eighty cents per can ; and

During the month of October, ninety cents per can, all in the year 1891.

And defendants agreed to said prices, and to receive and pay for milk during said period of six months at said prices, at the date of the guaranty hereto attached.

That all the milk for which the plaintiff claims the right to recover in this suit was received from the plaintiff by the persons so consigning the same, in the manner aforesaid, and was delivered to the defendant C. C. Ford, during the month of October, 1891, under and pursuant to the agreement and arrangement previously referred to, and a written guaranty accompanying the same, which is herewith offered in evidence, and forms a part of the admitted facts in this case.

That all said business between said plaintiff and defendants was done and transacted under and pursuant to the aforesaid regulations of said association, and that for and on account of the milk so sold and delivered under said arrangement during said month of October, there is yet a balance unpaid to the plaintiff by the defendant C. C. Ford, of four hundred and thirty-three dollars and eighty cents ($433.80).

It is further stipulated that this cause shall stand for trial as if the written guaranty introduced in evidence had been properly specially declared upon, and that the pleas filed by defendant properly related thereto; also that replication stands to said pleas; also that the number of the stockholders (members) of said association, is approximately fifteen hundred (1,500), and was at the date aforesaid.

## CONSTITUTION AND GENERAL LAWS

#### OF THE

### INCORPORATED JOINT-STOCK ASSOCIATION OF MILK SHIPPERS AND PRODUCERS, TRIBUTARY TO THE CITY OF CHICAGO.

#### ARTICLE I.    NAME AND OBJECT.

Section 1.    This company shall be known as the Chicago Milk Shippers' Association.

Sec. 2.    The objects of the incorporation of this association shall be to secure to the producer of milk a just return for the sale of the same; to rid the field of city distribution of irresponsible and dishonest dealers; to establish a central bureau of information for the shippers' benefit, and to secure to the dealer of milk a pure, wholesome and honest quality of that product.

#### ARTICLE II.    JURISDICTION AND GENERAL OFFICE.

Section 1.    This association shall have jurisdiction over all districts shipping dairy products to the City of Chicago, in which local organizations of milk shippers have been, or may hereafter be, established in accordance with the regulations hereinafter provided.

Sec. 2.    The general office of this association shall be permanently located in the City of Chicago and State of Illinois.

### ARTICLE III.   CAPITAL.

Section 1.   This association shall be incorporated with a capital of one hundred thousand dollars, which shall be divided into ten thousand shares of ten dollars each.

### ARTICLE IV.   BOARD OF DIRECTORS AND DUTIES.

Section 1.   A board of directors, to consist of nineteen members, shall be chosen by ballot at the first regular meeting of the stockholders, and annually thereafter.

Sec. 2.   The board of directors shall hold its second regular meeting upon the last Tuesday of March, 1892, and annually thereafter.   The board may be convened by the secretary at any time, whenever a request shall be made by five members of the same.

Sec. 3.   It shall be the duty of the board of directors upon the day of its selection to proceed to elect by ballot, for the term of one year, a president, a secretary and a treasurer.

Sec. 4.   The board of directors shall, at the first regular meeting of each year, select an advisory committee, to consist of five members of said board.   This committee, with the president of the association, to constitute the board of management.

### ARTICLE V.   DUTIES OF THE OFFICERS OF THE ASSOCIATION.

Section 1.   The president of this association shall preside over all meetings of the stockholders and board of directors; he shall convene the advisory committee whenever the affairs of the association require its attention; he shall recommend for the approval of the board of management a manager, and an assistant manager, whenever in his opinion the business necessities of the association require the services of such assistants, and shall perform all the duties ordinarily attached to the position of president.

Sec. 2.   The secretary shall keep a full and complete record of all the business transactions of the association, in all its relations with its membership, as well as with all other parties doing business with it; he shall be present at all meetings of the stockholders and board of directors, and shall prepare minutes of the same; he shall give bonds for

the honest and faithful performance of his duties, in such amount as the board of directors may deem sufficient. The board of directors shall determine the compensation he shall receive for his services.

Sec. 3. The treasurer shall keep a correct account of all receipts and expenditures of the association, based upon his own record of the same, and confirmed by the books of the secretary; he shall secure vouchers for payments of money made; his books of account, money on hand and vouchers, shall be open to the inspection of the board of management at all times, and shall be promptly delivered to his successor in office; he shall give bonds for the honest and faithful performance of his duties, in such amount as the board of directors may deem sufficient, and, at the end of his official term, make a full and complete report of the financial condition of the association. The board of directors shall determine the compensation that he shall receive for his services.

ARTICLE VI.    GENERAL LAWS.    CAPITAL STOCK.

Section 1. The certificates of capital stock of the association shall be held by the secretary until paid for. All assessments, as paid, shall be indorsed thereupon, and whenever desired, the secretary shall furnish a duplicate receipt to the party in whose name the stock is recorded.

Sec. 2. No transfers, sales or assignments of the capital stock of the association shall be made to any person who is not, or does not expect soon to become, a producer and shipper of milk.

Sec. 3. In order to secure the full protection and benefits of the association, all members must own as many shares of its capital stock as they ship cans of milk per day; but it is expressly stipulated, that in no case shall any stockholder own more than fifty shares of the same.

Sec. 4. The board of management shall determine the number and limits of the periods for the delivery of milk; it shall, between the first and fifteenth of the month, previous to the beginning of said periods, establish the price to be paid for milk, and shall give due and sufficient notice of

the same to the members of the association, and the city dealers.

Sec. 5. City dealers will be required to pay the price ordered by the board of management; and, in order to secure compliance with this and other requirements of the association, all parties purchasing milk of the same will be required to give bonds, or furnish other security to the satisfaction of said board.

Sec. 6. Of the market price, as determined by the board of management, the treasurer shall retain five cents upon each can of milk sold for each day. The fund, so created, shall be used to make up the loss in price which any member may sustain who is required, at any time, to sell his milk out of the city market for more than five days during any one month, and at a less price than that ordered by the board. The expense of managing the association shall also be paid out of the above fund, and any balance remaining on hand at the end of the year shall be returned to the stockholders in proportion to the number of cans shipped.

Sec. 7. This association shall have supervision and authority over all milk consigned by any of its members to any stand or other place of reception within the corporate limits of the city of Chicago.

Sec. 8. The stockholders at any stand or station holding not less than fifty shares of the capital stock of the association, may organize a local organization, to take charge of all local interests and to keep up close business relations with the central association. Stands holding less than fifty shares may, for purposes of organization, attach themselves to others nearest of access, so that their combined shares represent the necessary number. Local associations shall have full power to adopt by-laws for their government, provided they do not conflict with any of the provisions of the constitution and general laws of this association.

Sec. 9. Of any proposed amendment to the constitution and general laws of this association, fifteen days notice shall be furnished the members of the board of

directors, and a two-thirds vote of the members present shall be necessary to secure the adoption of the same."

It must be kept in mind that the corporation is the appellant; plaintiff below. It is the legal entity which the law regards. For the purposes of this case the stockholders have no existence. If the corporation is an abuse in itself, the State may call upon it to defend itself in a direct proceeding. It, as a corporation, having a legal existence separate from all other, has combined with nobody, and therefore has not violated the act of 1891.

The proper construction of the act does not prohibit the conduct of corporations or copartnerships, in accordance with the opinion of a majority of the directors or partners, after mutual counsel.

The appellant was entitled to recover, and the case having been tried by the court without a jury, the judgment below will be reversed and judgment entered here for the appellant for $433.80, with costs of this court and of the Circuit Court.

*Reversed, and judgment.*